UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RAMIN ZAMANI-ZADEH,                                                                                                  No. 20-11939-t7

       Debtor.

TAEKI MARTIN,

       Plaintiff,

v.                                                                                                           Adv. No. 20-1077-t

RAMIN ZAMANI-ZADEH,

       Defendant.

## **OPINION**

       Before the Court is Plaintiff's motion for summary judgment that her state court judgment against Defendant is nondischargeable. Because "fraud" is mentioned in the judgment, Plaintiff argues that the principles of claim and issue preclusion entitle her to summary judgment on her § 523(a)(2)(A) claim. Defendant disputes that he should be precluded from trying the proceeding on the merits. Considering the parties' submissions and the relevant law, the Court finds that Plaintiff's motion is not well taken and should be denied.

A.       Facts.

       There is no genuine dispute about the following facts:

       On January 30, 2009, Plaintiff sued Defendant and four corporations or limited liability companies in the Circuit Court for the State of Oregon, County of Multnomah, Case No. 0901-01452 (the "State Court Action"). Plaintiff asserted a claim for financial abuse of a vulnerable

person, in violation of Or. Rev. Stat. (ORS) §§ 124.100 and 124.110.[1] Plaintiff sought "economic" damages of $1,048,862.60 alleged to have been suffered from the financial abuse.[2] Debtor answered a "First Amended Complaint"[3] on July 21, 2009 but failed to appear for trial.

The state court entered a General Judgment and Money Award on May 14, 2010 (as amended, the "Judgment").[4] The caption on the Judgment differs from the caption on the original complaint and on Defendant's answer. The Judgment included the following findings of fact:

> 1. Plaintiff Martin is a vulnerable person within the meaning of ORS 124.100.
> 2. Defendants are liable for violations of the prohibitions on financial elder abuse as provided by ORS 124.100 by way of the Defendants and each of them having engaged in a scheme designed to deprive the Plaintiffs of money through artifice, false pretense, and fraud which were established clearly and convincingly. All named Defendants were conduits and vehicles for fraud and were alter egos of Defendant Ramin Zamani, aka Ramin Zamani-Zadeh. The total financial loss from such artifice and frauds to Plaintiffs, inclusive of statutory pre-judgment interest, is in the sum of $233,955.17.
> 3. The Court makes a finding that Plaintiff Martin suffered non-economic damages by way of anxiety, emotional distress and loss of enjoyment of her life resulting from the stress attendant to the loss of monies described during a time when she has limited income. The Defendants and each of them are jointly and severally liable for $100,000.00, which in accordance with ORS 124.100 is trebled to $300,000.00.
> 4. Defendants Zamani and Ibiza, Inc. are jointly and severally liable for economic and non-economic damages in the amount of $476,865.50.
> 5. Defendants Zamani, Ibiza, Inc., Zamani Entertainment, LLC (Oregon), 365 Z Production, Inc., and Elite Limousine, Inc. are jointly and severally liable for economic and non-economic damages in the amount of $525,000.00.

---

[1] "Financial abuse" arises "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person." ORS § 124.110(1)(a). Plaintiff was a "vulnerable person" because she was over the age of 65. ORS § 124.100(1)(a), (e)(A)

[2] The complaint also had counts for conversion and violation of Oregon's corporation and limited liability statutes.

[3] The first amended complaint is not in the record. It may have added three defendants (365 Auto Dealer, Inc., Elite Limousine, Inc., and International Entertainment, Inc.) and deleted one defendant (Zamani Entertainment LLC, a Washington limited liability company). In any event, Defendant's answer has these changes in the caption. The lack of a controlling pleading in the record is grounds to deny the summary judgment motion.

[4] An amended judgment was entered on September 24, 2010.

6. The Court makes a specific finding that the lease documents executed in favor of Lease Corporation of America do not bear the genuine signature of Plaintiff Martin, but rather represent forgeries by Defendant Ramin Zamani, aka Ramin Zamani-Zadeh.

7. The Court makes a specific finding that Defendant Ramin Zamani 1) violated the Temporary Restraining Order signed by Judge Jean Kerr Maurer on January 30, 2009 by continuing to conduct business on behalf of Ibiza, Inc. by making bank withdrawals totaling $17,238.00 from an account belonging to Defendant Ibiza, Inc., and 2) violated the Preliminary Injunction signed by Judge Leslie Roberts on March 12, 2009, by attempting to write $75,192.39 in checks on Banner Bank account number 7806047611 in the name of Defendant Ibiza, Inc. The Court hereby grants Plaintiffs' Motion for Contempt.

The Judgment included a "Money Award" in favor of Plaintiff and Zamani Entertainment[5] against Ramin Zamani and Ibiza, Inc. (jointly and severally) of $476,865.50; and an "Additional" judgment against Ramin Zamani, Ibiza, Inc., Zamani Entertainment, LLC,[6] 365 Z Production, Inc., and Elite Limousine, Inc. (jointly and severally) of $525,000.00. The total money judgment was $1,001,865.50, with interest accruing at 9% per annum.

Several aspects of the Judgment are confounding to this Court, including:

- The Judgment inserts a former defendant as a co-plaintiff, without explanation, and grants that entity a judgment against the other defendants;

- The complaint has no allegation regarding the "Lease Corporation of America" that is the subject of paragraph 6 of the Judgment;

- Paragraph 7 of the Judgment is based on events that occurred after the complaint was filed;

- Although non-economic damages were not sought in the complaint, they are awarded and trebled in the Judgment; and

---

[5] Inexplicably, the Judgment added Zamani Entertainment LLC, a Washington limited liability company, as a co-plaintiff.

[6] Apparently a different entity than the plaintiff, being an Oregon limited liability company.

- The money judgment does not square with the damages identified in the court's findings of fact and no explanation for the discrepancy is given.

Plaintiff filed this bankruptcy case on October 7, 2020. The chapter 7 trustee filed a report of no distribution on November 24, 2020. Plaintiff filed this adversary proceeding on December 30, 2020. The complaint asks that the state court judgment[7] be declared non dischargeable under § 523(a)(2)(A).

The motion for summary judgment is comprised of the "Declaration of Ivan M. Karmel" (Plaintiff's counsel); copies of the state court complaint, answer, and Judgment[8] and a supporting memorandum. Mr. Karmel's declaration avers that he was Plaintiff's counsel in the State Court Action and that copies of the state court documents are "true" copies.

The memorandum sets forth a "summary of facts," which the Court assumes is intended as a statement of the undisputed material facts upon which Plaintiff relies in support of her motion. The facts are the following:

> On May 14, 2010, [Judge Reese] entered a judgment against [Debtor] and his codefendants, which the court found to be Defendant's alter ego. . . .
> 1. The relevant findings in that judgment were as follows: Plaintiff . . . is a vulnerable person within the meaning of ORS 124.100.
> 2. Defendants are liable for violations of the prohibition on financial elder abuse as provided by ORS 124.100 by way of Defendants . . . having engaged in a scheme designed to deprive [Plaintiff] of money through artifice, false pretense, and fraud, which were established clearly and convincingly. All named Defendants were conduits and vehicles for fraud and were alter egos of [Debtor], Ramin Zamani, aka Ramin Zamani-Zedeh. The total financial loss from such artifice and frauds to Plaintiff, inclusive of statutory prejudgment interest, is $233,955.17.
> 3. Plaintiff . . . suffered non-economic damages by way of anxiety, emotional distress, and loss of enjoyment of her life resulting from the stress attendant to the loss of monies described during a time when she has limited income. The

---

[7] In the complaint, and in the motion, Plaintiff characterizes the judgment as a "default judgment." In her reply to Defendant's response, Plaintiff asserts that the judgment was not a default judgment because evidence was presented at a trial—albeit at a trial for which Defendant failed to appear.

[8] An amended Judgment is attached to Plaintiff's reply in support of the summary judgment motion.

Defendants and each of them are jointly and severally liable for $100,000, which in accordance with ORS 124.100 is trebled to $300,000.

As a result of the latter finding the court found Debtor jointly liable along with the alter ego defendants for $100,000 in non-economic damages, which were trebled in accordance with ORS 124.100 to $300,000.

After making findings of fact against one of the Debtor's alter ego entities, 'Elite Limousine,' the court then went on to make specific findings of fact that Plaintiff's signature had been forged on lease documents by the Debtor. Further, the court found that the Debtor had violated a Temporary Restraining Order by continuing business on behalf of another alter ego corporation, 'Ibiza Inc,' and by making withdrawals totaling $17,238.00 from an account in the name of that corporation, for which he was found in contempt of court. He was further found in contempt for attempting to write $75,192.39 in checks in the name of that company, in violation of a preliminary injunction. With the trebling of damages, the Debtor was found to be liable to the Plaintiff for the sum of $1,001,865.51 exclusive of fees and costs.

Plaintiff argues that the Judgment is for "fraud," and should be given preclusive effect for purposes of her § 523(a)(2)(A) claim.

B.  Summary Judgment Standards.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P.[9] 56(c); Fed. R. Bankr. P.[10] 7056. "[T]he substantive law [governing the dispute] will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (citing *Anderson*, 477 U.S. at 248).

---

[9] Hereafter, a "Rule."
[10] Hereafter, a 'Bankruptcy Rule."

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying [the portions of the record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

C.     Plaintiff Did Not Plead § 523(a)(4) or (6) Claims.

Although Plaintiff's complaint seeks relief only under § 523(a)(2)(A),[11] she argues in the motion that the debt also is nondischargeable under § 523(a)(4), and (6). The Court construes Debtor's references to § 523(a)(4)[12] and (6)[13] as a request to amend the complaint pursuant to Rule 15. *See Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011) ("An issue raised for the first time in a motion for summary judgment may properly be considered a request to amend the complaint, pursuant to" Rule 15).

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or with the court's leave. The court should freely grant leave when justice so requires." As indicated in Defendant's response to the motion, he does not consent to an amendment of the complaint. Whether to allow the amendment is therefore within the Court's discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Plaintiff has provided no explanation for failing to include §523(a)(4) and (6) claims in her complaint, or for not seeking to amend her complaint earlier, and the motion to amend shall be denied accordingly. *Id. at* 1206 ("[D]enial of leave to amend is appropriate when the party filing the motion has no

---

[11] While Plaintiff makes a reference to § 727 (the Code section governing whether a chapter 7 debtor is entitled to a discharge), it is clear from the allegations that she does not seek denial of Defendant's discharge, but only to have his debt to her declared nondischargeable. Plaintiff has not stated a claim under § 727.

[12] Governing nondischargeability of debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

[13] Governing nondischargeability of debts for willful and malicious injury by the debtor to another entity or to the property of another entity.

adequate explanation for the delay."); *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) ("[U]nexplained delay alone justifies" denying a motion to amend.). Denial of the motion to amend is without prejudice to Plaintiff's right to file a properly supported motion to amend the complaint under Rule 15(a)(2).

D.     Elements of a § 523(a)(2)(A) Claim.

Section 523(a)(2)(A) prohibits the discharge of a debt "for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud[.]" To prevail in her § 523(a)(2)(A) claim, Plaintiff must prove the requisite facts by a preponderance of evidence. *In re Young*, 91 F.3d 1367, 1373 (10th Cir. 1996).

1.     False Pretenses. False pretenses under § 523(a)(2)(A) are "any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor." *In re Osborne*, 520 B.R. 861, 869 (Bankr. D.N.M. 2014), *quoting In re Sturgeon*, 496 B.R. 215, 223 (10th Cir. BAP 2013). A false pretense claim presents the issue of "whether, by silence, insinuation, or inference, [the d]ebtor knowingly acted in [a way] as to create a false impression in the mind of [the plaintiff]" about the transaction at issue. *In re Woods*, 616 B.R. 803, 813 (Bankr. N.D. Okla. 2020).

2.     False Representation. "False representations are representations knowingly and fraudulently made that give rise to the debt." *Osborne*, 520 B.R. at 868, quoting *In re Sutherland–Minor*, 345 B.R. 348, 354 (Bankr. D. Colo. 2006), *see also In re Lewis*, 271 B.R. 877, 885 (10th Cir. BAP 2002). To prevail on a false representation claim, the Plaintiff must prove: "The debtor made a false representation; the debtor made the representation with the intent to deceive the

creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss." *Young*, 91 F.3d at 1373.

        3.      <u>Actual Fraud</u>. "Actual fraud" "denotes any fraud that involves moral turpitude or intentional wrong." *Husky Intern. Elecs., Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016). It can be proven by showing "a scheme to deprive or cheat [Plaintiff] of property or a legal right." *In re Vickery*, 488 B.R. 680, 690 (10th Cir. BAP 2013); *see also* 4 Collier on Bankruptcy ¶ 523.08[1][e] (actual fraud is "a deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.")

E.     <u>Plaintiff's Summary Judgment Motion is Defective</u>.

        In this district, the movant must provide "a concise statement of all material facts movant contends are not in genuine dispute. The facts shall be numbered and shall refer with particularity to the portions of the record relied upon." NM LBR 7056-1(a). The requirement of numbered undisputed facts helps the Court and opposing counsel. Plaintiff did not come close to complying with the local rule; she merely attached copies of some (but not all) of the state court pleadings and the Judgment. The failure to comply with the local rule alone is grounds for summarily denying the motion. *Id.* ("The court may summarily deny any motion that does not comply with this rule.").

F.     <u>Preclusion Principles</u>.

        1.      <u>Full Faith and Credit</u>. Plaintiff's argument that the Judgment is dispositive of her § 523(a)(2)(A) claim is premised on the full faith and credit statute, 28 U.S.C. § 1738. The statute provides in relevant part that authenticated copies of "[t]he records and judicial proceedings of any court of any . . . State . . . . shall have the same full faith and credit in every court within the United States . . . as they have by law . . . in the courts of such State . . . from which they are taken."

2. <u>Claim Preclusion and Issue Preclusion</u>. Historically, claim and issue preclusion were "collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). In modern jurisprudence, courts have moved away from the phrase res judicata, in favor of the clearer terminology distinguishing claim preclusion, *i.e.*, the effect of a prior judgment in foreclosing successive litigation of the very same claim, from issue preclusion, *i.e.*, the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law. *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (distinguishing claim and issue preclusion); *Taylor*, 553 U.S. at 892 n.5 (claim and issue preclusion "have replaced a more confusing lexicon").

3. <u>Claim Preclusion Does Not Apply</u>. Plaintiff's nondischargeability proceeding is a matter within this Court's exclusive jurisdiction, so claim preclusion does not apply. *Brown v. Felson*, 442 U.S. 127, 138-39 (1979) ("the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeabilty of [a] debt."); *In re Deitz*, 760 F.3d 1038, 1043 (9th Cir. 2014) ("the bankruptcy court, via the reference from the district court, has the exclusive authority to determine the dischargeability of debts under § 523(a)(2)"); *In re Crespin*, 551 B.R. 886, 900 (Bankr. D.N.M. 2016) (same).

4. <u>Oregon Law Governing Issue Preclusion</u>. 28 U.S.C. § 1738 requires "a federal court to refer to the preclusion law of the [s]tate in which judgment was rendered" and to give any judgment the same preclusive effect it would be given by a court in that state. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). In Oregon, "[i]ssue preclusion ... preclude[s] relitigation of [a factual] issue . . . [that] has been determined by a valid and final determination in a prior proceeding." *McCall v. Dynic USA Corp.*, 906 P.2d 295, 297 (Or. Ct. App. 1995). The requirements of issue preclusion under Oregon law are:

1) The issue in the two proceedings is identical;

> 2) The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding;
> 3) The party sought to be precluded has had a full and fair opportunity to be heard on that issue;
> 4) The party sought to be precluded was a party or was in privity with a party to the prior proceeding; and
> 5) The prior proceeding was the type of proceeding to which the court will give preclusive effect.

*In re Bond*, 548 B.R. 570, 576 (Bankr. D. Or. 2016), citing *McCall*, 906 P.2d at 297–298. "The party asserting issue preclusion bears the burden of proof on the first, second, and fourth requirements, whereupon the burden shifts to the party against whom preclusion is asserted to show that the third and fifth requirements are not met." *In re Bond*, 548 B.R. at 576, quoting *Thomas v. U.S. Bank Nat'l Assoc.*, 260 P.3d 711, 719 (Or. App. 2011).

G.      The Judgment Has no Issue Preclusive Effect in This Proceeding.

   1.   The Issues in the Two Proceedings are not Identical. The Judgment was based on Plaintiff's claim of financial abuse of a vulnerable person. As noted earlier, financial abuse can arise "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person." "Wrongful" as that term is used in ORS § 124.110(1)(a) is not defined by statute. *Church v. Woods*, 77 P.3d 1150, 1153 (Or. App. 2003). Oregon courts have construed the term very broadly to include any conduct "carried out in pursuit of an improper motive or by improper means." *Id.* at 1153 ("Improper means, for example, include 'violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation[,] . . . disparaging falsehood' and "undue influence"); *Gibson v. Bankofier*, 365 P.3d 568, 580 (Or. App. 2015) (citing *Church*); *Bates v. Bankers Life & Cas. Co.*, 408 P.3d 1081, 1085 (Or. 2018) (the element of wrongfulness may be satisfied by proof of fraud, conversion, or theft). In sum, it appears that any tort may provide the basis for satisfying the "wrongful" element of the financial abuse statute.

The only tort pled in Plaintiff's state court complaint, conversion, was not mentioned in the Judgment. Plaintiff did not plead any kind of fraud (*e.g.*, false pretenses, false representation, or actual fraud). The state court made no findings that would support the legal conclusion that Defendant had defrauded Plaintiff. Instead, the Judgment includes the "finding" that Defendant "engaged in a scheme designed to deprive the Plaintiffs of money through artifice, false pretenses, and fraud . . . ." The Judgment apparently was drafted by Plaintiff's counsel and signed without alteration by the state court. This conclusory "finding," based on unknown evidence, does not establish an identity of issues between the State Court Action and Plaintiff's § 523(a)(2)(A) claim.

2. <u>The Issues Were Not Actually Litigated and Essential to the Judgment</u>. To satisfy the second requirement for issue preclusion, Plaintiff must demonstrate that the issue was "actually litigated" *and* "essential to the judgment." *Bond*, 548 B.R. at 576; *see also Hayes Oyster Co. v. Dulcich*, 110 P.3d 615, 619-20 (Or. App. 2005) (issue preclusion applies "only if the issue was 'actually ligated and determined' in a setting where 'its determination was essential to' the final decision").

a. <u>Actually Litigated</u>. An issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined[.]" Restatement (Second) of Judgments § 27 cmt. d. (1982); *see also Dulcich*, 110 P.3d at 620 (relying on the Restatement (Second) of Judgments § 27 to define issue preclusion). As discussed earlier, false pretenses, false representation, and actual fraud were not raised by the pleadings in the State Court Action. There is nothing in the Judgment that indicates that the state court considered these issues and based its determination on evidence that would support a reasonable conclusion that Defendant was guilty of false pretenses, false representation, or actual fraud. The state court's

conclusory finding of "artifice, false pretense, and fraud" is inadequate proof that the elements of any § 523(a)(2)(A) theory were actually litigated or determined.

    b. <u>Essential to the Judgment</u>. When issues are "determined but the judgment is not dependent upon the determination," they are not "essential to the judgment." Restatement (Second) of Judgments § 27 cmt. h. The Judgment demonstrates that Debtor is liable to Plaintiff for financial abuse of a vulnerable person. Although a finding of wrongfulness was essential to the judgment, the elements of false pretenses, false representation, or actual fraud were neither essential to, nor addressed in, the Judgment.

H. <u>Under Oregon and Federal Law, Courts Can Elect Not To Give Preclusive Effect to a Default Judgment.</u>

  "[I]ndependent of, and in addition to, whether a party had a full and fair opportunity to present its case in the action resulting in an adverse judgment[,]" the Court may decline to give issue preclusive effect to an prior judgment if it would be unfair to do so. *State Farm Fire & Cas. Co. v. Century Home Components, Inc*., 550 P.2d 1185, 1193 (Or. 1976); *see also Gilbertson v. PEI/Genesis, Inc.*, 2007 WL 2710437, at *3-4 (Bankr. D. Or. 2007) (declining to give issue preclusive effect to an Oregon state court default judgment for fraud). Similarly, under federal law a court has the discretion not to apply issue preclusion. *See, e.g.*, *Arapahoe Cty Pub. Airport Auth. v. F.A.A.*, 242 F.3d 1213, 1220 (10th Cir. 2001) (issue preclusion is an equitable doctrine, applied at the court's discretion). Because false pretenses, false representation, or actual fraud were not pled in the State Court Action, Defendant was not given a full and fair opportunity to litigate the issues. For this and other reasons the Court would exercise its discretion not to apply issue preclusion here, even if it were otherwise applicable.

Conclusion.

Claim preclusion does not apply in nondischargeability proceedings. Issue preclusion cannot be used in this proceeding because the state court did not make the necessary fact findings, the issues were not actually litigated, and the Court would exercise its discretion not to apply the doctrine in any event. To the extent the motion seeks leave to amend Plaintiff's complaint, the request will be denied without prejudice. Plaintiff's complaint does not state a claim under § 727. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 12, 2021
Copies to: counsel of record