UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

RAMIN ZAMANI-ZADEH,                                                      No. 20-11939-t7

      Debtor.

TAEKI MARTIN,

      Plaintiff,

v.                                                                       Adv. No. 20-1077-t

RAMIN ZAMANI-ZADEH,

      Defendant.

## **OPINION**

      Before the Court is Defendant's motion to reconsider the declaratory judgment entered in this proceeding, declaring that Defendant's judgment debt to Plaintiff is nondischargeable. As the Court believes the judgment was correct, the request will be denied for the most part. However, the Court will amend one of its findings and will clarify that the judgment is not a money judgment. The nondischargeable amount will not be altered and all other requested relief will be denied.

A.    <u>Facts</u>.

      To rule on the motion to reconsider, the Court incorporates its findings of fact in the opinion entered on May 11, 2023. Capitalized terms not otherwise defined in this opinion have the meanings ascribed to them in the earlier opinion. In addition, the Court finds:[1]

---

[1] Some findings of fact are in the discussion section.

On May 14, 2010, an Oregon state court entered a judgment of $1,001,865.51 in favor of Plaintiff against Defendant under Oregon's Abuse of Vulnerable Person statute.[2] The judgment included $233,955.17 in "economic damages," $100,000.00 in "non-economic" damages, and trebled both. Defendant filed this no-asset chapter 7 case on October 7, 2020 and was granted a discharge on August 17, 2021. Plaintiff filed this adversary proceeding on December 20, 2020, seeking a ruling that the judgment debt is nondischargeable under § 523(a)(2)(A).[3,4]

The Court tried the proceeding on March 2, 2023. The Court heard testimony from the Defendant, reviewed Plaintiff's testimony from the state court action, and examined the admitted documentary evidence.[5] On May 11, 2023, the Court held that the entire state court judgment debt was nondischargeable and entered a declaratory judgment to that effect.

Defendant filed the motion to reconsider on May 25, 2023. Attached to the motion is Defendant's affidavit, purporting to give additional evidence about how the money he borrowed from Plaintiff was spent.

Plaintiff did not respond to the motion or question the propriety of the post-trial affidavit. The matter is now ripe for adjudication.

---

[2] *See* ORS § 124.100(2).
[3] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[4] Section 523(a)(2)(A) excepts debts for false representations, false pretenses, or actual fraud. A false representation claim has five elements: 1) debtor made a false representation; 2) with the intent to deceive creditor; 3) creditor relied on the false representation; 4) creditor's reliance was justifiable; and 5) creditor was damaged as a result. *In re Sturgeon*, 496 B.R. 215, 222 (10th Cir. BAP 2013).
[5] The Court takes judicial notice of the docket in this adversary proceeding, including the Oregon state court judgment. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

B.  Motions to Reconsider.

Neither the Federal Rules of Civil Procedure ("Rules") nor the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") recognize motions for "reconsideration." *See, e.g., Hatfield v. Board of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995) ("The Federal Rules of Civil Procedure recognize no 'motion for reconsideration.'"), citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)); *see also In re Sandia Resorts, Inc.*, 2016 WL 3150998, at *4 (Bankr. D.N.M.) (same but includes the Bankruptcy Rules also). Motions denominated as such typically are brought under Rules 52(b), 59(e), or 60(b).

1.  Motion to Alter or Amend Findings (Rule 52(b)).

> Under Fed.R.Civ.P. 52(b), a court "may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." [Rule 52(b)] "A motion made pursuant to Rule 52(b) will only be granted when the moving party can show either manifest errors of law or fact, or newly discovered evidence; it is not an opportunity for parties to relitigate old issues or to advance new theories." [*Blann v. Rogers,* Case No. 11–2711–CM, 2014 WL 6895592, *1 (D. Kan. Dec. 5, 2014) (citations omitted)].

*Retiree, Inc. v. Anspach*, 95 F. Supp. 3d 1303, 1307 (D. Kan. 2015) (footnotes inserted into the text), aff'd in part, rev'd in part, 660 F. App'x 582 (10th Cir. 2016). "The standard[s] for a District Court to review a Rule 52(b) motion and a Rule 59(e) motion are essentially the same." *Handley v. United States*, 2021 WL 5195814, at *1 (N.D. Ala.), quoting *Access 4 All, Inc. v. Atl. Hotel Condo. Ass'n, Inc.*, 2006 WL 8431635, at *1 (S.D. Fla.); *see also Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986) (the purpose of Rule 52(b) motions to amend is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence).

2.  Motion to Alter or Amend Judgment (Rule 59(e)).

> Rule 59(e) permits a party to request reconsideration of a final judgment. [Rule 59(e)]. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the

> need to correct clear error or prevent manifest injustice." [*Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000).] "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." [*Id.; see also Phelps v. Hamilton,* 122 F.3d 1309, 1324 (10th Cir. 1997). A motion to alter or amend a judgment should be granted only "'to correct manifest errors of law or to present newly discovered evidence.'" [*Phelps,* 122 F.3d at 1324 (citations and quotations omitted)]. "Neither a Rule 59(a) nor a Rule 59(e) motion is the appropriate avenue to revisit issues already considered or to argue matters not raised in prior briefs." [*Blann v. Rogers,* 2014 WL 6895592 at \*2 (D. Kan.) (citing *Servants of the Paraclete,* 204 F.3d at 1012; *Waugh v. Williams Cos., Inc. Long Term Disability,* 323 Fed. Appx. 681, 684–85 (10th Cir. 2009)].

*Anspach*, 95 F. Supp. 3d at 1307-08 (footnotes inserted into the text).

> Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to [Rules 52 and 59] are to be granted "sparingly," *Maldonado v. Lucca,* 636 F. Supp. 621 (D.N.J. 1986), and only when "dispositive factual matters or controlling decisions of law" were brought to the court's attention, but not considered. *Pelham v. United States,* 661 F. Supp. 1063, 1065 (D.N.J. 1987).

*Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003), aff'd on other grounds sub nom, 125 F. App'x 406 (3d Cir. 2005).

In the Tenth Circuit and elsewhere, grounds for relief under Rule 59(e) are: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000), citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

If a "motion to reconsider" is filed within 14 days after a judgment is entered,[6] most courts treat it as a Rule 59(e) motion. *See, e.g., In re McCaull*, 494 B.R. 81, at \*2 (10th Cir. BAP 2009) (unpublished) (construing Debtor's motion to reconsider, filed nine days after the order in question was entered, as a Rule 59(e) motion); *Buchanan v. Sherrill*, 51 F.3d 227, 230 n.2 (10th Cir. 1995)

---

[6] The deadline under Bankruptcy Rules 7052 and 9023 is 14 days. For actions in the United States district court, the deadline is 28 days. *See* Rules 52 and 59.

("we construe a post-judgment motion filed within [14] days challenging the correctness of the judgment as a motion under Rule 59(e)."). Since Defendant filed the motion to reconsider 14 days after entry of the declaratory judgment, the Court will treat it as a request to amend findings of fact under Rule 52(b) and/or to alter the judgment (Rule 59(e). Rule 60(b) need not be addressed.

C.     Plaintiff's Failure to Respond.

For reasons unknown, the Plaintiff did not respond to the Motion. Failure to respond to a motion is grounds for the Court to grant the requested relief. *See* NM LBR 7007-1; *see also Lucero v. HSBC Bank USA, N.A.*, 837 Fed. App'x 655, 656 (10th Cir. 2021) (affirming the New Mexico district court's dismissal of a case because plaintiff did not respond to defendant's motion to dismiss); *Chamberlin v. City of Albuquerque*, 2005 WL 2313475, at *1 (D.N.M.) (discussing a similar local rule for the New Mexico District Court). A party failing to object to a motion does so at his own peril. Nevertheless, the Court is not required to grant an unopposed motion to reconsider. *See, e.g.*, *Belhomme v. Gibson*, 2015 WL 6393814, at *4 (D.N.M.) (citing *Phelps*, 122 F.3d at 1324) (trial courts have wide discretion in ruling on a motion to reconsider).

The Court will not punish Plaintiff for her counsel's lack of diligence. The failure to respond is consistent with the half-hearted litigation approach taken by Plaintiff's counsel since filing the complaint. In view of the significant efforts counsel made in the 2010 state court trial, the Court expected more of counsel. Instead, he has consistently put forth the minimum effort or, as here, no effort at all. That is too bad, but it is not Plaintiff's fault.

D.     Defendant's Post-Trial Affidavit.

Attached to the Motion is Defendant's affidavit, accounting for money Defendant allegedly spent getting the restaurant project off the ground. The evidence, now 15 years old, clearly was available at the time of the trial. It is not newly discovered. Had Defendant thought it important,

he should have introduced it at trial. The affidavit testimony cannot be the basis for altering or amending the Court's findings, conclusions, or judgment. *See, e.g., Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir. 1992) (quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985)) (a motion under Rule 59(e) to alter or amend the judgment should only be granted "'. . . to present newly discovered evidence.'"); *Adams v. James*, 526 F. Supp. 80, 86 (M.D. Ala. 1981); *Evans, Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976) (the purpose of 59(e) and 52(b) motions is to correct manifest errors of law or fact using evidence not available at trial).

E.  The Challenged Findings.

In the motion, Defendant argues that the Court misapprehended the facts because it assumed that that allegations in the 2010 state court complaint were correct. Defendant also argues that the Court relied on documentary evidence that was not part of the trial record. Neither argument has merit.

Specifically, Defendant asks the Court to reconsider three findings.

1.  First Finding. "*In May 2008, Defendant and Martin bought a boat, using $6,104 from the Zamani Entertainment bank account and a loan for $21,099 obtained in Plaintiff's name.*"

This finding is based on the following evidence in the trial record:

- On March 2, 2023, beginning at 10:29 a.m., Defendant testified that a 1994 Mirage 25' boat was purchased from Northwest Boat Center in Portland, Oregon;

- He further testified that a check from Zamani Entertainment signed by the Defendant, dated May 22, 2008, for $6,104 was a payment for the boat;

- He further testified that a $21,099 loan was obtained from the Plaintiff's bank and put into the Plaintiff's name as purchaser;

- He further testified that the boat was titled in the Defendant's name; and,

- On February 22, 2010, at 11:31 a.m., Plaintiff testified that she was not aware of money from the US Bank account being used to buy a boat and that she was not aware of a loan for a boat in her name.

The Court will not amend this finding.

    2.    <u>Second Finding</u>. "*In October 2008, Defendant caused Zamani Entertainment to pay an additional $77,396 for limousine repairs and expenses. The expenses were paid with checks made out to cash and a Zamani Entertainment debit card. Martin had access to the debit card.*"

This finding is based on the following evidence in the trial record:

- On March 2, 2023, beginning at 10:52 a.m., Defendant testified that cashier's checks totaling $75,000 from the U.S. Bank account of Zamani Entertainment were deposited in the Elite Limousine Service account on June 30, 2008, for the purchase of a limousine;

- He further testified that an additional $77,396 was transferred from the Zamani Entertainment account to the Elite Limousine Service account;

- He further testified that cash withdrawals totaling $42,424.00 and debit purchases totaling $136,413.29 were made from Elite Limousine accounts;

- He further testified that the debit purchases were for such places as Portland City Grill, Rock Bottom Brewery, other restaurants, and clothing stores and airlines; and,

- When asked if that was how he paid his limousine drivers, Defendant testified: "Mr. Karmel, ever since Steven was out of prison every single bank account and cards we had, he had 100% access to it, just like I did. He did not have a job, so his total expenses, his total day to day living, came off of those credit cards."

The Court will amend the second sentence of the finding to read: *"Cash withdrawals totaling $42,424.00 and debit purchases totaling $136,413.29 were made from Elite Limousine accounts. The amounts were used to pay labor and other expenses of Elite Limousine, and also to pay Steven Martin's living and entertainment expenses. Steven Martin had no job after he got out of prison, had access to all the credit cards Defendant had access to, and used the cards for his living and other expenses."*

3      Third Finding. "*In July 2008 Defendant, through an attorney, drafted an LLC interest purchase agreement (the 'Purchase Agreement') that obligated Plaintiff to pay $480,000 for 75% of Zamani Entertainment. Defendant convinced Plaintiff to sign the Purchase Agreement. Plaintiff was persuaded that she would be able to make the required payments from her restaurant profits.*"

This finding is based on the following evidence in the trial record:

- On March 2, 2023, beginning at 10:42 a.m., Defendant testified that he remembered having Plaintiff sign the LLC interest purchase agreement prepared by Defendant's attorney;

- He further testified that the payments would total $480,000, with $50,000 down and $13,673.89 monthly payments;

- He further testified that this would purchase the remaining 75% interest in Zamani Entertainment LLC;

- He further testified that the purchase agreement was signed in July, 2008; and,

- On February 22, 2010. at 11:46 a.m., Plaintiff testified that Defendant told her the payments due under the LLC interest purchase agreement would be paid from the restaurant proceeds.

The Court will not amend this finding.

F.   The Nondischargeable Amount.

The Motion also asks that the Court reconsider the amount of the Oregon state court judgment that was found to be nondischargeable. Specifically, Defendant argues that the "non-economic" damages, both actual and trebled, should not be held nondischargeable. This argument is not well taken and must be overruled. The United States Supreme Court has provided guidance on this subject:

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt ... for money, property, services, or ... credit, to the extent obtained by" fraud encompasses any liability *arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief* that may exceed the value obtained by the debtor.

*Cohen v. De La Cruz*, 523 U.S. 213, 223 (U.S. 1998) (emphasis added). The Court did not accept Plaintiff's allegation of fraud as fact but examined the record and made its own determination based on the credibility of witnesses and the facts in the trial record. The non-economic damages and subsequent trebling of damages, although not "money, property, services, or an extension, renewal, or refinancing of credit" per §523(a)(2)(A), arose from the fraud. Therefore, per *Cohen*, they are nondischargeable.

Since *Cohen*, most courts have found non-economic damages to be excepted from discharge. For example, in *In re Scarbrough*, 516 B.R. 897, 924 (Bankr. W.D. Tex. 2014), *aff'd sub nom.*, 836 F.3d 447 (5th Cir. 2016), the court held:

> The Bell County judgment for fraud is nondischargeable under § 523(a)(2)(A). This includes the damage awards for past and future mental anguish and exemplary damages because "once it is established that specific money or property has been obtained by fraud ... 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998).

*See also In re Ahmed*, 2015 WL 845567, at *3 (9th Cir. BAP) (affirming the bankruptcy court's ruling that plaintiff's state court judgment against debtor for noneconomic damages was nondischargeable under § 523(a)(2)(A)); *In re Hill*, 265 B.R. 270, 279 (Bankr. M.D. Fla. 2001) (same); *In re Davis*, 486 B.R. 182, 191–92 (Bankr. N.D. Cal. 2013), *decision supplemented*, 2013 WL 2304684 (Bankr. N.D. Cal.) (same).

Like the above cases, the Court holds that non-economic damages awarded because of Defendant's fraud are just as nondischargeable as the economic damages awarded. Indeed, the essence of *Cohen's* holding is that non-economic damages are just as nondischargeable as economic damages, so long as they "arise from" the fraud. Hence treble damages, the *ne plus ultra* of non-economic damages, are nondischargeable. *Cohen*, 523 U.S. at 223. Here, all damages—economic, non-economic, treble damages, interest, and attorney fees—arise from Defendant's fraud. They are all, therefore, nondischargeable.

G.      The Nature of The Judgment.

Defendant asks the Court to clarify that its judgment is not a money judgment, only a declaration that the Oregon judgment debt is nondischargeable. Although the Court believes that the judgment is clear on this point,[7] it will grant the request so there is no possibility of confusion.

If necessary, bankruptcy courts may enter money judgments in dischargeability proceedings. In *In re Riebesell*, 586 F.3d 782, 793 (10th Cir. 2009), the Tenth Circuit held that "the bankruptcy court had jurisdiction to enter a monetary judgment against Mr. Riebesell as part of this adversary proceeding."); *see also Morrison v. Western Builders of Amarillo, Inc. (In re*

---

[7] The document is styled "Declaratory Judgment" and provides: "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that all amounts due and owing to Plaintiff by Defendant under that General Judgment and Money Award, entered May 14, 2010, in the case filed in Circuit Court for the County of Multnomah, State of Oregon, styled Taeki Martin, et. al., v. Ramin Zamani, et al., no. 0901-01452, are nondischargeable under 11 U.S.C. § 523(a)(2)(A)."

*Morrison),* 555 F.3d 473 478–80 (5th Cir. 2009) (same); *Cowen v. Kennedy (In re Kennedy),* 108 F.3d 1015, 1017–18 (9th Cir. 1997) (same); *Longo v. McLaren (In re McLaren),* 3 F.3d 958, 965–66 (6th Cir. 1993), *In re Kretchmar*, 591 B.R. 876, 881 (Bankr. W.D. Okla. 2018) (citing and following *Riebesell*); *In re Lamey*, 2016 WL 1466281, at *6 (Bankr. D.N.M.) (same).

However, bankruptcy courts usually determine the dischargeability of debts that have already been reduced to judgment, in which case there is no need to enter a separate, duplicative money judgment. *See, e.g., In re Heckert*, 272 F.3d 253, 257 (4th Cir. 2001):

> [W]hen a prior state court judgment is the debt at issue, we are of opinion that the bankruptcy court, in an adversary proceeding to determine whether the debt is dischargeable, cannot issue its own judgment on the debt to replace the state court judgment previously obtained. All the bankruptcy court is called upon, or authorized to do, is to determine whether or not the state judgment is dischargeable.

*See also In re Loder*, 796 Fed. App'x 698, 700 (11th Cir. 2020) (citing *Heckert* with approval); *In re Sasso*, 2016 WL 3548819, at *3 (Bankr. D.N.M.) (citing and following *Heckert*); *In re Maudsley*, 2006 WL 6810971, at *7 (9th Cir. BAP) ("bankruptcy court generally does not enter a new money judgment but simply declares that the state court awards, or some portion of them, are nondischargeable"); *In re Comer,* 27 B.R. 1018, 1020–22 (9th Cir. BAP 1983), *aff'd,* 723 F.2d 737 (9th Cir. 1984) (same). That is what happened here. Plaintiff obtained a money judgment against Defendant in Oregon state court and asked the Court to declare it nondischargeable. After trial on the merits, the Court concluded that Plaintiff was entitled to the requested relief. The declaratory judgment resulted. The court did not intend to, and did not, enter a money judgment against Defendant. The only money judgment involved in this proceeding is the 2010 Oregon state court judgment.

H.	Reconsideration and/or New Trial.

For the reasons given above, the request that the Court reconsider its judgment and/or grant Defendant a new trial is not well taken and will be denied.

## Conclusion

By separate order, the Court will make the indicated change to the second challenged finding and will clarify that its declaratory judgment is not a money judgment. All other relief will be denied.

							_____
							Hon. David T. Thuma
							United States Bankruptcy Judge

Entered: June 30, 2023
Copies to: counsel of record